back on the record? Yes, please do. The next case is number 19-1485, Elvin Jose Torres-Estrada v. United States. At this time, would counsel for the appellant please introduce himself on the record to begin? Good morning. Ezequiel Cortez on behalf of Mr. Torres-Estrada. I'd like to reserve three minutes for rebuttal if I may. Yes, you may. This case is a unique case for a 2255 ineffective assistance of counsel case because the facts atypically are undisputed. And so what does that get us and what does that give us to the Leffler-Frey issue that this court certified? Counsel, I'm sorry. I want to be sure I heard you correctly. You say this is unusual because the facts are undisputed? Correct. Okay. Very correct. Thank you, Judge Lepez. In Leffler and in Frey, this court knows the different lawyers each believed that he could do better. In each case, each lawyer adopted a negotiation strategy or rather in one just forgot to tell the client the government's offer because he believed he could beat it at trial. And in Frey, the lawyer told the client this is a not very good offer. You shouldn't accept it. And then the client goes and gets another offense and comes back and pleads guilty. What does that have to do with Torres-Estrada's undisputed facts? It has to do with the following. Ramon Garcia, the local lawyer, hometown, if I may use that phrase, that colloquial phrase, the New York lawyers are getting in and trying to steal the client from them. And he eventually did. And I will read to the court what I believe encapsulates this entire case. This is a passage from Attorney Ramon Garcia's own declaration. He realized belatedly he may have done something wrong. He specifically says in his declaration, among other things, that the reason why he believed a 13-year offer was a great counteroffer, not a good one, a great one, was because, and I quote, I did not believe the government had enough evidence to justify longer than that. What does that sound like? It sounds to me like he made a rational decision. Judge Thompson, that's precisely what the government is arguing. But there's something wrong with that. And if I may explain what I think is wrong with that. A rational decision is only as rational as the basis upon which it rests. The attorney Garcia had not reviewed the discovery. He was a third wheel in this defense team, and the defense team became dysfunctional, undoubtedly. But why was that not a rational decision? Because he was wrong. He was proven wrong later by being rejected by the government after he got rid of Granger and Sapone. He reaches out to the government. Just because you're wrong doesn't mean you're ineffective. No, sir. Judge Lopez, you're absolutely right. But see, if you take that logic, the same logic you're applying right now, and classifying as the government has, as a rational choice, then you have to look at what the two lawyers in Lafleur and Frey each did. You might say, Judge Robinson, that in Lafleur, the lawyer was rationally thinking that they couldn't prove the more serious crime at trial. And so that's a very rational decision. Yet the court found that to be reckless. Well, here, as I understand it, the government extends an offer of, what was it, 188 months? Yes, sir. And all three attorneys agreed they weren't going to go back with a simple I accept. They were going to have a counteroffer. Yes, sir. And so they just disagreed, as it turned out, on the counteroffer. Yes. And Garcia went for a more aggressive counteroffer than the other two wanted to go for. Yes. Knowing full well, Judge Gallardo, that the government gave specific guidelines about a counteroffer. Number one, it had to be two years more than the code of a negron. And it also had to be within a certain parameter. Well, sure. But in negotiations all the time, one side says to the other, oh, you've got to do this or you've got to do that. And ultimately, it turns out there was a little bluffing or puffery. You press, you get a better deal than that. Sometimes you do, sometimes you don't. Of course. He was trying a little harder, maybe too hard. But how do we say that no reasonable attorney would have gone for, what did he go, 156? To 20 some years. So how do we know no reasonable attorney would have made that counteroffer? Thank you. We know for two reasons. One, and again, left or right, you could say the same thing about each lawyer, left or right, but we know specifically in this case why that was not rational. Attorney Garcia, having blown the negotiations by sabotaging everything, getting the client to fire a grand juror and sapone, then goes back to the government and wants to negotiate. What does the government do? They ignore him. Then what happens? They do exactly what the prosecutor said. Outside Henwood told them. This is a time-sensitive offer. It's the best it's going to get. So then what happens? After Garcia gets the second indictment, he waits a bit. The day of the jury selection for the trial that was not continued, he pleads Mr. Torres-Estrada guilty. So if his decision back before that was so rational, then why is he doing pleading the client guilty openly the day of trial? It helped me here. As I understand it, one of the problems was that after the point in time where all the attorneys agreed they were not going to accept the 188, they were going to make a counteroffer, they differed as to the counteroffer. He makes his counteroffer, which is the lower one. Everything then blows up because the government decides they're going to bring another indictment. They discover information that says there's another crime. I think under Strickland, for us to find Strickland error, we would need to find that had the other two lawyers gone back with their counteroffer, the government wouldn't have tumbled to that other evidence and brought another indictment. How do we find that? Easy. How do we propose? Under Strickland, what Attorney Garcia did, you're being very generous. He was local counsel. He was not supposed to be negotiating. But this is a very, very strict plea negotiation set of meetings. The prosecutor is very strict. If your client doesn't take my very generous offer, number one, the offer is classified by the government as very generous. Eventually, it turns out to be that. Number two, I'm looking into another conspiracy. We're not finished, but I'm looking into another conspiracy. And if you don't take the deal, I'm going to suspend negotiations and indict your client. And number three, what happens? What happens is that Garcia recklessly told Mr. Torres-Estrada to turn down the government's offer. But this is where you're losing me. The other two lawyers who you say were good lawyers who were following it, they also, their decision was to turn it down. Yes, but see, the record is very clear, Your Honor. The record shows that even the prosecutor, Elsa Henwood, even he told them, look, I'm not going to be that serious about my high-end offer. We'll see. And so the other two lawyers were counting on the lower range of that offer, and everybody understood implicitly that that was the spirit. That's why Granger and Sapo and the other two lawyers were willing to take that offer. And so what did Garcia do? Laughter and fright. They tell us, if you get a client to a state of mind where the client tunes down a favorable offer, you've got a problem here. But you're not answering Judge Quijada's question. The problem is nobody was in agreement that they should accept the government's offer. The answer is very strict, and it's in the record. Granger and Sapo and Mr. Torres had agreed, had agreed that they were going to suggest the low end of that range. Let me understand. First of all, what is the state of the record here? Is this Garcia declaration, is it part of the record here? Because initially the judge strikes it when it's first offered. Did it subsequently become part of the record so that we can rely upon his account of what was going on during the negotiation? Is that part of the record? The answer is no, Judge Lippis. And the reason why. The answer is no. The answer is no. So why, on what basis are we giving this account of what Garcia says happened when his account is not even part of the record? Thank you. Did you appeal that order striking? No, Your Honor, we didn't. We were in the midst of trying to finish the 2255, and you saw the record that we developed. There was very strong resistance, but let me answer your question, Judge Lippis. We don't need the specific document, that 94-1, to rely upon what really happened and what Garcia admitted, because all of those statements are contained within Granger's declaration and Mr. Torres Estrada's declaration. When you take those two that were not struck, and you look at what they agree upon, there are far more. Okay, let me ask you this, then. So the Granger affidavit, if you will, is part of the record. It seems to me there is this critical moment when the three attorneys are with the prosecutor, I guess Mr. Henwood. The lead attorneys have told Torres Estrada, don't have Garcia there. We don't want him as part of this critical negotiation. Torres Estrada ignores that advice, wants Garcia there. And it's at that meeting, and this is what I understand Garcia to be saying, that he had authorized Garcia to make a counteroffer that maybe was a little more aggressive than that of lead counsel. But Garcia interjects with an even more aggressive offer than Torres Estrada had authorized. And that's what blows the whole thing up. Yes, sir. That's exactly what happened. May I say why? Why matters in life's dynamics. Torres Estrada has been characterized by the government throughout this past ten years that I've been in the case as one of the largest, if not the largest, narco-trafficker in Puerto Rico. Imagine Attorney Garcia coming in as a local counsel, trying to get less than ten years for what the government considers one of the largest drug traffickers in Puerto Rico. That's not rational, Judge Thompson, to answer your question from about five minutes ago. It is irrational. And so what happened here is you're absolutely right. In that little window, Garcia blows everything up. Okay, but let me, because this is why I was struck by your statement at the beginning, that there are undisputed facts here. Yes, sir. Because it's the government's account, essentially, that Torres Estrada, he can only blame himself for what happened here because he kept Garcia involved. But I gather it's his account that, yeah, he kept Garcia involved, authorized him to make a counteroffer, but then Garcia disregarded that advice and made a too aggressive offer, which blew the whole thing up. Yes, sir. But is that an undisputed version of what happened here? It is undisputed. Let me see if I can nuance what you just noticed. Torres Estrada has been classified as the government as basically playing his lawyers. It's in the brief. It was in the motion at the district court level. This guy just gets lawyers and he uses them. In other words, they changed the focus from the Sixth Amendment obligation on the lawyer, not on the defendant, if you will, and they take a set of two cases, Loeffler, Frye, and they say in those cases the defendant wasn't taking advantage of anyone. They were not calculating and being strategic as well. Those same things, Judge Lopez, can be said about each defendant in Loeffler and Frye because they did the exact same thing. One went to trial. So I'd like you to come back to because maybe I wasn't clear enough. I'm trying to get what your theory is on prejudice. You need to show that there's a reasonable probability that had the two New York lawyers gone back with their counteroffer, that there would have been a happier ending here. Yes, sir. Would you like me to answer now or wait? Well, I'm asking the question now. Thank you, sir. 2255 proceedings, you know, you take the allegations like a civil case. You take the allegations of the petitioner as true. And then going from that, what does this have to do with what you just asked? Torres Estrada, in his declaration, unrebutted, specifically for under oath, that he would have taken the government's offer, the 188-month offer. Granger said he would have taken the offer. Okay? The record is very clear that he would have taken the offer, whereas the prejudice, it's almost palpable. But the record is also clear that he didn't. I'm sorry? The record is also clear that he didn't take the offer. Because of Garcia's sabotage. That's what happened in last Friday. You seem to skip over the fact that the other two lawyers who you say were giving good advice were not ineffective, were advising him not to take the offer, to make a counteroffer. And so you need a causation theory that has him making the counteroffer. Yes, sir. And then the government doing something other than what it did. Your Honor, the government itself said to all three of them, especially lead counsel, this is not a final offer by us. Give me a counteroffer. Is there any evidence in the record that the government? Yes, sir. It's in the declarations of Granger. Listen to my question. Sorry. Is there any evidence in the record as to what the government would have done? Any testimony here or factual basis for finding that the government would not have tumbled to his involvement in the other crime and brought the other charge against him? The only evidence that is directly addressing your question is in the plea agreement that was offered. Within the plea agreement, it says the same thing that Granger said in his email. That if you pleaded guilty, there wouldn't be more charges filed. It's in the plea agreement. You're claiming there's an immunity clause in the plea agreement? No. As you know, it's a normal plea negotiation strategy. Look, I can get your client for five other cases, but if you plead to this one, I won't. It's not immunity. The government's discretion to do that is there. And that's what the government did here, and it's in the plea agreement. If you plead, no more charges. Right, so you'd have to say that they would have, after the counteroffer, which is a rejection of their offer, they would have re-extended their offer on the same terms despite what's going on in the other case. And my question is, what factual basis is there in the record for us predicting that that would have been the course of action that would have ensued but for Garcia's advice? There is evidence. In the record, there's evidence of the government wanting two more years for Torres than he did for Negron. Evidence in the record by way of the declarations from Granger that the government basically reacted to Negron's lawyer, Castro Long. That's the name of the lawyer. He made a counteroffer. The government opined that that counteroffer was reasonable and that he would take it back. So there is that evidence about what the government's thought process was, and the thought process was very clear from the record. This is inviting a counteroffer. Negron makes a counteroffer. The government says it's reasonable. All that Garcia had to do, stay away, instead of offering far less than that. The government wanted two more years for Torres Estrada. It's all on the record. So what's the prejudice to go back and loop it to the record? The client was basically persuaded through lies, through lies, direct lies, not to accept the government's offers, plural, and instead to go to a much lower counteroffer that was not going to be accepted, and all the parties knew that. That's palpable prejudice. Okay, thank you. Thank you, and thank you for allowing me to go through. Thank you, counsel. At this time, counsel for the government would please introduce themselves on the record to begin. Good morning again, Your Honors. May it please the Court, Julia Maconiatis for the United States. In this case, Mr. Torres has failed to shoulder his burden to prove an effective assistance of counsel because Mr. Garcia's performance here did not fall below an objective standard of reasonableness, nor has he been able to show that he was prejudiced. Now, first, the government would like to distinguish this case from the cases often cited and cited by Mr. Doddison as brief. In Lafleur. Do you accept the representation that this case has uncontested facts? The outcome-determinative facts, Your Honor, in this case are not contested. What about the representation that Garcia made an unauthorized counteroffer, that was different than what Torres had authorized? Well, Your Honor, what's in the record from Mr. Granger's affirmation was that the day before, there was going to be a joint meeting with the defense team of two co-defendants. So we had Mr. Garcia, Mr. Granger, and Mr. Cipone for Mr. Torres. And then we had Attorney Castro-Lang and Steven Petolsky for Mr. Negron. These are co-defendants four and five that were quite similarly situated in this case. And the day before, Mr. Garcia meets with Torres, and Torres says, 13 years is okay. And when he tells the other attorneys, the New York attorneys, they go and they meet with him again, and he says, 13 and 8 months, I believe. I'm not sure if it was 8 or 6. I'm sorry, I can clarify that. It was going to be okay. So when he goes into the meeting and he sort of shoots from the gun and says 13, that offer had been previously authorized by Mr. Torres, and it was Mr. Granger and Cipone who said, no, we were going to do, I believe it was 13 and 8 months. Wait a minute, I thought that Torres Estrada, it's his account that the counteroffer that Mr. Garcia made at that critical meeting was not authorized by him. I thought that he had authorized something that was at least much closer to what his New York counsel said would be a reasonable counteroffer. Do I misunderstand? I would need to double check that, Your Honor, but there is an email that Mr. Garcia sends Mr. Cipone and Mr. Granger saying that Torres authorized me to argue for 13 years. But let's assume that that didn't happen. I'm just sort of like, let's develop this. After the 13-year was rejected by the AUSA at that meeting, he upped the ante immediately and said 13 and a half years. And that was not flatly rejected. There the AUSA said, I'll consider that. Let me take that to my supervisors. And that's what Your Honors have decided and Mr. Cortez has said is the sort of blow-up moment in negotiations. But the record shows otherwise. Because even though the 12-year offer for Mr. Negron and the 13-and-a-half-year offer for Mr. Torres was then denied by the parties, the negotiations continued. And that's on the record. We have Mr. Granger and Mr. Cipone emailing the government saying, we're sorry that this happened. We'd like to continue negotiations. And then we have correspondence from Mr. Cipone and Mr. Granger to Mr. Garcia saying, I'm continuing to negotiate with the government. The prosecutor here is speaking with his supervisors and they're taking up our counteroffer. So that blow-up moment where everything apparently changed didn't change anything. Because then they were able to get their offers back to the government, which the government subsequently rejected. But that's still not the end of the case. Because even though the government said no, our original 188 stands and the 14 years for Mr. Negron stands, both parties continued. No one said yes. Mr. Negron and Mr. Torres, they both continued to negotiate. And in the government's opposition to the Lafler motion below, there was a series of emails which shows that Castrolan even continued up until December to push for 13 years for his client. So that 13 year for one of the biggest drug suppliers in Puerto Rico was something that the co-defendant, who they decided to align their strategies, saying that they're extremely experienced and well-respected attorneys in Puerto Rico, they did the same thing, Your Honors. And there's no alleged ineffective assistance of counsel there. And I want to take the moment to distinguish this particular case from both Lafler and Frye. In Lafler and Frye, we had the defense attorney give incorrect legal advice. But there, when it went up to the Supreme Court, the state had said that that was ineffective, that prong one was conceded. Here, there's no such concession. So all they were looking to see was, was there prejudice? Because he went to trial, there the state conceded that it was ineffective. Was there prejudice? Well, yeah, because he got a higher sentence. Here, we're not saying that there's any prejudice here. And here, it's not an incorrect legal rule. Here, it's an issue of strategy. And at the end of the day, 13 years, or even pushing it up to 13 and a half versus 14, which is what the New York Dream Team wanted to do, the Supreme Court has said in Primo and even in Frye, that negotiation strategy is so individualistic that you can't put precise, there can't be a precise, detailed rule book, because it has to do with personality, it has to do with experience, with whether you know your prosecutors. And you have an individual here who wasn't selling dreams. He said that the average, pursuant to the Granger Affidavit, the average drug supplier got 8 to 12 years. He wasn't asking for 8 to 12 years. His original counteroffer began at 13, recognizing that this was somewhat outside of the bell curve. This is not what he considered a normal case. And at that point, his client wasn't even in the first trial group, because this was a widespread conspiracy. The judge had parsed out different trial groups, and since Mr. Torres was a fugitive, he wasn't in that first trial group. Waiting and seeing whether he could possibly negotiate something doesn't fall below the objective standard of reasonableness, especially when Mr. Patulski and Mr. Castrolan did the exact same thing. And this case, similarly, isn't like Missouri v. Frye. Here, the plea offer was clearly told to the client, and he was part of the negotiation strategy on how to pursue the counteroffer. And this strategy was also, you have four Dream Team attorneys, Granger, Sapone, Castrolan, and Patulski, that actually went to Mr. Torres and said, we don't think this aggressive strategy might be the best. So he got both sides of the coin and ultimately chose. But that coin, I'd like to remember, is only a year difference at worst, and six months difference at best. And such a small span cannot be said to go outside the bounds of effective assistance of counsel. And also, there is nothing on the record, other than sheer speculation, to show that what happened at that meeting on September 28th, it upset the government so much that it went looking for more evidence to then indict the second case months later. There's a disconnect here as to what Mr. Garcia did by saying 13 months. Oh, no, 13 months and six years. There's nothing in the record to support the assertion that that's what caused the government to then go and get a cooperator to flip and then indict the second case. Well, I think there's a theory on causation, I think, we've tried to get at it, was that but for Garcia's intermeddling, as they describe it, there would have been a deal, and the deal would have obligated the government to blind itself to whether or not there was another indictment that it could bring. And so they say that's the opportunity that they lost. Well, but, Your Honor, after the deal, after the counteroffer was rejected, there was still space for negotiation, and neither of the two gentlemen that were aligned in this strategy took the deal. Had they taken the deal, would that have precluded the government from bringing another indictment? Your Honor, that is in the Granger affidavit, and in the government's opposition below, the government pushes back on that idea, saying that even if they had taken the deal, it denies the reality that they would have been subject to the same indictment. I keep hearing disputed facts here. I mean, the account of Torres Estrada is that Garcia, in an unauthorized way, intervenes at this critical meeting. It blows everything up. He loses the opportunity, then, to accept the government's offer, which I understand him to say he would have done. And the counteroffer that he authorized, he understood from his lead attorneys that that might be rejected and might force him to then accept the government's offer, which I understand him to say he was prepared to do. But, Your Honor, he's not. Let me just add this point, please. But because of the way in which Garcia interjected, he lost that opportunity, and then all the terrible things follow from that. He can't enter into this agreement, which, according to opposing counsel, the government had said that no new charges would be brought. And so all the terrible things that happened to him come in the wake of that lost opportunity to accept the government's offer, which is all Garcia's fault. Now, there's another version of that. You say, no, no, negotiations did continue. That was not the decisive moment. And so his account is incorrect. But there seems to be a dispute about what happened in the wake of that critical meeting. Your Honor, I would respectfully push back that there is a dispute there. I think the only dispute that Your Honor said is whether that 13 was authorized. But what happened between then and afterwards, there's no dispute. And it's actually in the exhibits of the Granger affidavit. Yes, there was infighting, but then it clearly shows that Mr. Granger and Mr. Cipone were able to continue negotiating with the prosecutor. They gave the counteroffer that they believed was the appropriate one, not the 14-year counteroffer, which was then rejected. And at that point, the prosecution never withdrew the agreement. It said our original offer stands. So he was in no worse position afterwards. What was the time limit? Because this was the time is of the essence. What was the time limit that the defense had to accept the offer? The offer did not have, in the e-mails, did not have an expiration date. However, indicated in the Granger affidavit, it said before the first group goes to trial. The first group was supposed to go to trial at the end of October, but then it got pushed to the end of November, and then it got pushed to March. And by March, he was included in that trial group. He wasn't in the first two trial groups because he was a fugitive at the time that those were set, so he wasn't in that first group. So that's why you still have Mr. Negron also in December negotiating a plea deal because the offer had not expired. So when the ongoing negotiations were happening, when the government said, well, that's not an unreasonable offer, so that was sort of hanging out there. So the time frame to think about that having a termination date is what? Well, at that point, when originally the district court had put October 13th as the date to file the motion for the change of pleas, and that first trial group, which Mr. Tordes was not a part originally, was supposed to be in, I believe, October 25th or October 30th. So the first trial was supposed to start two weeks after that. That trial gets vacated and set to November 30th. But there was no expiration on the offer. And as you can see, even after the October 13th date comes and goes, the defense attorneys are still negotiating with the government because that was what the court had said, but the government had never put an expiration date on that offer, nor did it withdraw it. Once it said first no to the 13-and-a-half years, then it said no to the 14 years, and it said that's the government's offer. So the offer was there. It was never taken off the table at that point. And you could have accepted it. You're saying if we put on a timeline everything that Garcia is alleged to have done that was ineffective, after that last point on the timeline, negotiations continued during which the 188 was still extended and could have been accepted? Yes, Your Honor. So you're really saying that whatever Garcia, however you want to characterize it as effective or ineffective, nothing he did prejudiced Mr. Torres Estrada because that offer remained on the table for him to accept. I'm saying there is no prejudice, but I'm not saying that it was also ineffective. I'm saying that one-year strategy falls in the expansive bounds of what would have been competent negotiation. But even if you were to assume for the sake of argument, he can't show any pressure because even after that meeting where I think it was co-counsel that said that blew up everything, the offer was still on the table. And not only was it on the table. And there's nothing in the Granger affidavit that contradicts that, is it? No, Your Honor. The Granger affidavit shows it because he puts exhibits saying that I'm still in, I was able to continue to negotiate with the government. Mr. Henwood's bringing this offer, our counteroffer, back to his supervisors. I'm waiting to hear from him. So that newer 14 years presumably doesn't say what the years was, but if we know that Mr. Garcia said 13 and their plan originally was to be 14 because he was offered 188, we're negotiating and I'm waiting to hear back from Mr. Henwood who is conferring with his supervisors. So given that panorama, if I may finish my thought, whatever Mr. Garcia may or may not have done, it didn't take away any opportunity from Mr. Torres at the time to make the decision. And before Mr. Ciponi and Mr. Granger withdrew from the case, that same plea offer, which everybody said was extremely generous, was still there for the taking. Thank you. Thank you. I believe you reserved three minutes. Before you introduce yourself on the record. Yes, sir. Ezekiel Cortez for Torres Estrada. I want to borrow from my distinguished colleague a phrase. It's apt. It's what? Apt for this purpose. Apt? A-P-P. Sorry, my accent. Sheer speculation, she said, about some of the things that I presented. And we're wondering right now. Are you disputing that the offer remained on the table? I am. In the record, that's also. Are you disputing that they continued negotiating? I thought the record did demonstrate that ongoing negotiations were occurring. I am. And if I may direct the court's attention to a word that's in one of that correspondence that counsel mentions. In the Granger email and in other exhibits, the word abruptly appears prominently. Abruptly. Why is it there? Because all the lawyers Granger attends declaration. In the back and forth with Garcia, the government suddenly and abruptly ended negotiations. So, no, there was no offer out there hanging anymore. What happened, if I may suggest, when you look at the record, the government could have dispelled these things really easily. File a declaration. We cannot engage for purposes of argument what could have happened, what would have happened. Because what happened, we know what happened. And the declarations of file are to be given credit as though they're true. Let me make sure I understand what you're saying in response to Judge Thompson's question. Are you saying that after Garcia made the 13-year counteroffer and after it was rejected, the 188 from the government was never on the table again? No, I'm not saying that. So, if it was on the table again, then where's your prejudice? The guy could have been accepted at that point. This is the prejudice. By that point, Garcia had blown everything up, had persuaded Mr. Torres not to accept the 188, and the government abruptly ended negotiations. You cannot very, like, pragmatically look at the dynamics. That's a whole different theory. I mean, now the theory of ineffective assistance of counsel is not the making of the 13-year counteroffer, but it's convincing Torres that he shouldn't take the 188. That's a whole different theory. They're both. They're in our brief. And they're not irreconcilable. And they're in our, especially our reply brief. Please look at our reply brief. The theory is not a theory. Those are the facts. There was a 188-month offer that was acceptable to Mr. Torres. But let's be precise. You're agreeing with what the government has said, which is, I think, contrary to what you just said a while ago, you're agreeing that the 188 remained available to Torres after the rejection of the 13, but he simply, at that point, refused to take the 188 because he had been convinced by Garcia not to do so. And that's, if I might, that sounds like that plays right in to the government's version of what happened here, that he, maybe he should not have been persuaded, but he remained a free agent. He could have rejected Garcia's advice, but apparently for his, this, I guess, is the government's version for his own tactical reasons, decided to accept it. And so he bears responsibility for what happened here. Ultimately, he was, he could have rejected Garcia's advice or he could have accepted it. He accepted it. He has to bear the consequences. That's absolutely the case. And by the way, the 188-month offer was no longer on the table as to that very minute moment. You've got to look at the record again. And why, why did. But you'll understand your causation theory drops out of the case, the unauthorized counteroffer theory. No. Then the only thing that had kept him, according to your theory, from accepting that offer is his being convinced by Garcia. All separate theory. I'm not saying it's not a bad theory. No, no. But you can't mix and match one. I'm not mixing and matching. This is a continuous course of conduct. You cannot cleanly separate at this point it was okay, at this point it was not okay. Let me be very, very clear, if I may, about our theory, as you call it. The 188-month offer was gone. Because the government basically was disgusted at what was happening in the defense camp. Wait, you just two minutes ago said the 188 was still out there. Before Garcia persuaded Torres to fire the New York lawyers. You see, in order for the 188-month offer to remain alive, you still have to have the three lawyers in the defense camp. Look at the timing of that. And, again, the government could have easily dispelled this fact had they filed a declaration. There are no declarations that say government counsel still maintained its offer open. I think your time is up. Thank you. Thank you for being patient. Thank you for the extra time. Thank you, counsel. That concludes argument in this case.